Call the next case, Lehigh Press, L.P.P.R, Inc. and Lehigh Press Pharmaceutical Vs. Keller Crescent Corporation Mr. Kingsley Thank you. May it please the Court, my name is Pat Kingsley. I represent the appellates in this case, Keller Crescent and Kledalken, and I would ask to reserve five minutes for my rebuttal. Your Honors, this case concerns the following question. Can a disgruntled party to a contract attempt to rewrite the terms of the contract at trial using parole evidence when the contract at issue is unambiguous and integrated? The law of Delaware applies to this case, and the answer is emphatically no, they cannot do that. This case involved the acquisition by my client Kledalken, which is a printing company, of the business of Lehigh Press, which was also a printing company on the island of Puerto Rico. As a result of that, the Lehigh Press business was a distressed business. It was failing. It was going to shut down. And as a result of that, there was a potential for tax credits under At one point, the district judge seemed to be saying, and even instructing the jury, that the key phrase, which is, I believe, net proceeds, was unambiguous. He ruled that clearly on several occasions, and I don't believe that's ever been challenged by Lehigh Press. But I'm unclear as to what he said, if anything, was the meaning of that, quote, unambiguous provision. The phrase was net proceeds, and it is defined in the contract in a parenthetical. And the definition is, it's the net of the cost, it's two things, the cost of collecting the tax credits and the cost of selling the tax credits. Those two things. Right. So your adversary seems to be saying that collecting should be defined differently than you define it. But if the district judge had found it to be unambiguous, then he would have had to resolve that difference. He would have said, no, collecting means X, it doesn't mean Y. But I don't think he ever said that. In fact, Your Honor, we moved for summary judgment, and it was denied, and the judge said it would be quicker just to have a trial. What I think the judge was saying, and what Lehigh Press's argument is, is we get to challenge whether the thing at issue, which is a $300,000 bond, we get to challenge whether that fits in the category of collecting the tax credits. And they say as an example, and quoting the judge, if we deducted the cost of a kitchen sink or a puppy, those are the two examples, a kitchen sink and a puppy, if we would have deducted those from the cost of collecting and selling the tax credits, that wouldn't be right, and we would be in breach of the contract. And that may be right, but that's not what we did, and that's not the evidence that they presented at trial. No puppies, no kitchen sinks. No puppies and no kitchen sinks. Well, I think that discriminates against animals. Yeah. What we did deduct was a $300,000 bond, which is undenied that that was essential. It was a requisite to collect the tax credits. It is denied. I mean, there's assertions in the record, and I can appreciate that you may disagree with them, where the party opposing you indicates it didn't have to be a bond. They needed some kind of assurance. They could have asked for other kinds of things, and the court seemed to accept that. But taking it for purposes of argument that a bond was what traditionally was used and that it was a sensible thing for you to get, why don't you speak to the point that your opponents referenced in their brief that evidence of coercive dealing and custom usage are always admissible under Delaware law. That's all we were doing here. Yeah. First point is, I do want to emphasize this, the lead-up to your question, Your Honor. There is absolutely no evidence in the record, none, none whatsoever, that we could have done anything better than get the bond we got. There is not a scintilla of evidence to the contrary. We tried and tried and tried. We tried to get a corporate guarantee. We tried all these other cheaper alternatives, and we could not do it. We had to go on bended knee to the Puerto Rican Treasury. Got you. We couldn't have done anything better. Okay. So does coercive performance and coercive dealing come in? There are two answers to this, Your Honor. First of all, it is exactly the opposite of that. Under Delaware law, if you have an unambiguous contract, coercive dealing, coercive performance never comes in. It only comes in if the term in question is ambiguous, and these terms are not ambiguous. Collecting and selling, these are two words that could be on my third-grader spelling test. They are not ambiguous. The judge correctly found that, and Lehigh Press has not challenged that. Consequently, under Delaware law, evidence of coercive dealing and coercive performance never comes in. Let me read you 6 Del Code 2202. This is the Delaware adoption of the Uniform Commercial Code. It says, a final expression, ellipsis, may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement, but may be explained or supplemented by coercive performance, coercive dealing, or usage of trait. That's the language they point to. What is it in that statute that makes you say you can't do that? The statute is the Uniform Commercial Code. Right. This wasn't the sale of goods. What Lehigh Press sold were adhesive labels, and when they sold those adhesive labels to their customers, that's probably the sale of goods. But we weren't buying adhesive labels. We were buying the company. It was a commercial transaction. So the UCC doesn't govern this, and there was no suggestion that the UCC governed it. There's no ruling by the court below. It self-evidently is an inapplicable statute. Well, there was no coercive dealing here in any event, was there? Absolutely positively not. This transaction was utterly unique in every way, and I mean that in, I think, two or three ways. First of all, it's the first time these two companies have ever done business with each other, Klondalkin buying the business of Lehigh Press. There was but one thing that was in dispute. It was us, you know, collecting the tax credits, deducting the cost of the bond, which we did. We gave them $1.1 million, and then they objected. And they objected because they didn't read the contract the same way we did. So it's one and one. And to emphasize, the third thing is, this is the first time that both parties agree, even in their briefs they agree, that a deal was ever structured like this. And what was unique about it was that we understood, read the briefs, know what you assert is unique about it. Did you do anything to try to counteract at trial the evidence that was being put in over your vociferous objections? Did you bring in any of your own witnesses to say, look, this is what we really agreed on, this is what we were really thinking? In other words, you're upset about parole evidence coming in. I'm just curious to know, were you fighting fire with fire? Yeah, we were. We brought – we cross-examined their witnesses. We brought our own witnesses. We brought in – actually, the guy who worked on the underlying transaction was the guy who wrote the statute that generates Puerto Rican industrial investment tax credits. So we did what we could. But the jury heard again and again the entire point of Lehigh Press's case was parole evidence. The argument that they made to closing was that Mr. Notario – The cost of the bond, was that completely paid? I mean, that was an outlay that had been incurred? No. It was cheaper to do it as a series of 10-year – a 10-year series of one-year bonds. So at the time of trial, I think $170,000 worth of the bonds had been paid. But we're going to continue – At the time the money was distributed to Lehigh, how much had been paid out? I think $170,000 had actually been paid out with the projection laid out in a chart for them, amortized over time. And there was no challenge to the cost or the way we amortized. I think we decreased the money for the future cost. The guy who did it was an accountant. And there was no challenge that we didn't accurately get the number right. Are you prepared to have the attorney's fees back on the table as you go back to trial, if that's what you get? I don't think that will be appropriate. They were presented by the court as two totally separate questions. So you really do want to have your cake and eat it, too? You won half, you want to keep that half, you want to go back on the other. Is that right? Well, we won the issue of attorney's fees despite the presence of completely inadmissible and inappropriate parole evidence. If it goes back for a new trial, how on earth would we frame the order to say, try this thing again, but not on that piece because these guys won? The judge below said, the jury was at one point hung on the issue of the cost of the bond. And the judge said, if the jury stays hung, I'm going to enter judgment in our favor on verdict one. And on verdict two, we'll declare a mistrial, we'll have the trial all over again. I don't see what would be different about that. The judge himself segregated the two costs, the cost of the attorney's fees for collecting the tax credit and the cost of the bond for collecting the tax credit. There were separate issues. Does the attorney's fees fit within the category of collecting the tax credit? Does the bond fit within the category of collecting the tax credit? And by the way, I know that a new trial is one of the options available to Your Honors, but I am asking for judgment as a matter of law. If you take away the parole evidence, then rewriting the contract, there is no evidence at all contradicting the notion that this bond was necessary to collect the tax credit. Absolutely not. So if we go that way, at this point, is there an amount, a dollar amount that is fixed? Is that what you're saying? Because the amount hasn't been fully paid out, as I understand. Yes, but we already deducted it. So there's no factual issue for the trial below to determine. We deducted the cost of the bond for the whole period. We told them what we were deducting, and we gave them the remainder of the money. So there's no calculation that needs to be done. There was no dispute as to the calculation. The only question was, did we get to deduct the cost of the bond in the first place? That's really the only issue. And if we did get to deduct the cost of the bond in the first place, there's nothing left to try. Okay. Can I ask one question, with your indulgence? Would the tax credit have been issued without the bond? No. And that was admitted by Lehigh Press in their opening statement, and in their closing statement, and in their brief to the Third Circuit to Your Honors, and every single one of their witnesses on cross and on direct admitted that, and every single one of my witnesses said that at trial, and I said that in my opening, and I said that in my closing, and I said that in my Third Circuit brief. All right. Thank you. Okay. Mr. Krause. Good morning, Your Honors. You've got to pull that over. Thanks. I'm shorter than Mr. Kingsley. In fact, I apologize. You may have to rest a little bit so you're speaking right into it. Thanks, Mr. Krause. May it please the Court, Aaron Krause for Lehigh Press Pharmaceutical Products and LPPR. I have three points to make this morning. First, the parole evidence rule only bars evidence that's offered to either contradict or vary the terms of the contract. It does not bar evidence which we presented, which is consistent with the terms of the contract, or which is admitted for other purposes. What was the relevance? Actually, the relevance goes to the second two points that I was about to make. First of all, that the parole evidence rule does not apply when you're talking about whether the contract was performed, and the jury was presented with sufficient evidence that what Keller did did not meet the terms of the contract. What was the evidence? What was the relevance? We argued that what Keller did did not meet the terms of the contract. That deducting the cost of that bond, that was not a cost of collecting the bond. It was, on the contrary, a cost... Isn't that purely a question of contract interpretation? Respectfully, no. How so? To use an example, yes, a rose is a rose is a rose. But if a party signs a contract for delivery of a dozen roses, the question for the jury, and this is the quintessential jury question, is, was what was delivered a dozen roses? This is the concise oil case. Is this not... Speaking of having it both ways, either the contract is ambiguous or it isn't, right? That's a binary decision, right? Agreed. And by the way, we argued that the contract was ambiguous. And lost? We lost. We have not appealed that finding. Agreed. All right. So if the contract is unambiguous, that means there aren't two fair interpretations of what a word means, right? Correct. Okay. So if there aren't two fair interpretations of what a word means, how do you have anything to say to a jury? Because if collecting is subject to two interpretations, then it's ambiguous. And if it's not subject to two interpretations, it's unambiguous. So how can you make the argument that we had a jury question, but it was an unambiguous contract? May I point out at the initial point that if what Your Honor suggests is correct, you could never have a jury trial of a breach of contract case with an unambiguous contract. I do not believe that is the law. And the reason for that is there can't... Well, speak with me, Mr. Krause. What does it mean to have an ambiguity? Does it mean it's subject to more than one interpretation? Correct. Okay. And if that is an ambiguity and you're saying collecting means one thing and they're saying collecting means something very different, is it ambiguous or an unambiguous contract? It can be an ambiguous contract where we have to argue... I'm asking you whether it is or it isn't. We argued it was, we lost. But as I said to Judge Bailson, in a way we are dealing with two sides of a square. The argument that was presented to the jury, the evidence that was presented to the jury is, is what Keller deducted in fact a cost of collecting? We can all agree, at least potentially, on what collecting means. Where we can disagree is whether Keller did... So what does collecting mean? What does collecting mean? Collecting means, in our opinion, once you have the tax credit, getting the money. So that's a very different meaning from what your adversary said was meant by collecting. My adversary says collecting is the same as securing, is the same as creating. So how can you say that's unambiguous? You're giving, the two sides are giving two separate, very different meanings to the word collecting. So then it must follow that the judge was wrong to say that it was unambiguous. I am not arguing with you, Your Honor, but we did not cross appeal on that point because you can get there another way. You can't get there another way because if it's actually ambiguous, the court had to have, under our case law, had to have given an interpretation to it, right? The court had to have made a judgment that this thing is ambiguous or not. And if it decided that it was ambiguous, that was something it had to say and then delineate for the jury what its issue was. But it wasn't free, was it, to say it's unambiguous and now I'm putting two different things in front of you? What the court charged, and by the way, this portion was not objected to by Keller. The court charged that the contract is unambiguous. The court charged, I believe, seven times that the jury must give the contract its plain and ordinary meaning and left it at that. The court said give the terms their plain and ordinary meaning. The court admitted evidence so the jury could put the contract in context and also put the performance in context. You're just losing me, Mr. Krause. How can you've acknowledged here that, as I think you must, that you did present a very, very different interpretation of the word collecting to the jury than what was being presented by Keller. So you had two completely different assertions about what the meaning of collecting meant and then you had the court saying to the jury, apply the plain and ordinary meaning. What's a jury supposed to do with that? The jury is supposed to take its plain and ordinary meaning and match it to the performance and say, does this performance... What plain and ordinary meaning? There's two ordinary meanings that are being put out there. Are you saying that the meaning they put out there was so irrational that it didn't have any entitlement to even be in the courtroom? I am suggesting that what Keller is trying to do, although certainly not as extreme as the examples Judge Payleson used, they're not trying to shoehorn a puppy or a kitchen sink under. What I think they are trying to do is go too far. For example, if what Keller is suggesting is any cost that was necessary to create the tax credit, to have the government of Puerto Rico certify it. They're suggesting that all gets deducted. If that was true, the entire $5.3 million purchase price, because if they don't buy the assets, there's no tax credit. Therefore, by their argument, they could deduct the entire $5.2 million purchase price, since by definition the tax credit can only be half the value, we never get anything. That isn't their argument, and your assertion that that's what happens by definition strikes me as just flat false. They have made an argument, which is it took money in order to get these tax credits, and everybody knew it was going to take money to get these tax credits. It wasn't going to be free. There was going to have to be legal counsel. There was going to have to be some kind of security. Everybody knew it, and we provided for that. Now, from there to your assertion that by definition they would have kept everything, it doesn't strike me as a helpful or persuasive argument. In order to defend this verdict, it occurs to me you have to be able to defend what the district court judge did. I want to ask you specifically, in a circumstance where this question of ambiguity or non-ambiguity is put to the court in a summary judgment motion, and the district court says, well, you know, this is a really thick motion. I think I can just try it quicker. Is that a proper exercise of judicial discretion? In this case, yes, because there was a question of whether the performance met the contractual requirements. What Your Honor is suggesting, again, is that if the contract is clear and non-ambiguous, that you can't have a trial on breach. No, I'm not suggesting that at all, Mr. Krause. I'm suggesting that if there were an agreed-upon understanding of what the word collecting meant, then you would put to the jury, these are the things that happened. Now, does that fit that agreed-on definition? And that happens all the time in contract cases. What I am also suggesting to you is it's passing strange to have two parties going into a court and with completely different statements about what the word collecting means, and having a district court judge say to the jury, or to those parties, this is unambiguous, and then telling the party, the jury, to apply the, quote, plain and ordinary meaning of the term. When you've got two different meanings being put, can you cite us any case where that happens? Any case, any precedent at all for a court saying it's unambiguous. Now listen to these two different meanings. Okay. I can't cite a specific case, and again, obviously below we argued it was ambiguous, but what the way that this could go to the jury, and I believe the way this did go to the jury, is as a dispute over whether the performance met the contractual requirements. That's why we presented evidence, by the way, not just of what the parties said in the past, but when Keller transmitted these deductions to Lehigh Press, they didn't label them as costs of collecting the tax credits. They labeled them as costs of securing the tax credits. When they corresponded with us, again, after the contract is signed, so there's no parole evidence issue, they never used the word collecting, and I believe the jury is entitled to find, perhaps not required to find, but entitled to find that if they did not... Why would that be relevant if the question is the definition of collecting? If the collecting was unambiguous and included, therefore, hypothetically, everything that was covered by some other term that a party used, securing or whatever, it would be irrelevant. If collecting doesn't cover it, then the thing is ambiguous, and then it would be relevant. So I don't understand what the relevance to the jury was of the difference between using the word collecting or securing if, as the judge had told them, the contract was unambiguous. If the party is labeling the deduction as something else, that is some evidence that it is, in fact, something else, and the question is where is the parameter of collecting? Now, we said that this was on the far side. I'm taking your original example. If a rose is a rose is a rose, but the party just says, labels it a nice red flower, you think that's relevant to whether it's a rose or not? If it's unquestionably, in fact, meets all the biological or botanical requirements of a rose? If it met all the botanical requirements, I suspect we would lose summary judgment. Well, the judge here got that for reasons unclear. I disagree. To push the hypothetical, if the party labeled it as a hybrid, and if the two experts testified and disagreed as to whether this had all the biological properties of a rose, maybe it had some but not all, that's the quintessential jury question. Well, then you're talking about, then you really are talking about what's a matter of performance. But in this instance, Mr. Krause, the question that's being put to us squarely is, is parole evidence admissible or not about what the meaning of the term is? Now, they're saying to us repeatedly, look, they brought in all these witnesses to say what collecting meant, to say it didn't mean securing, to say it meant what they said it meant. They put on lots of evidence about people saying what they think, including a Puerto Rican lawyer, etc., etc. That's all about the meaning of the term. So if that's about the meaning of the term, it's not about performance. It's about the meaning of the term. That's their assertion. Are they inaccurate in that assertion? The evidence that was presented was about the performance as well as the meaning of the term. And the judge rephrased. Stop. If you acknowledge that it's about the meaning of the term, then doesn't it qualify as parole evidence, which, if the term is unambiguous, you are not permitted to put in? No, for two reasons. First of all, because parole evidence only varies the terms of the contract. If it is consistent with the terms of the contract, it comes in. That's the True North case where this came up. Also the Wilson v. Pepper case. Second of all, Your Honor, the reason it comes in is because the question that the judge kept putting to the witness and made us put to the witness is, Mr. Witness, does what Keller did meet the terms of the contract? Answer, no. Why not? Now you're talking about performance here. I'm trying to focus you on your acknowledgment that there was discussion about what the term meant. And you say it was only consistent with the term. Doesn't that presuppose that there's an unambiguous term? How can you say it's consistent with the term? Don't you really mean it's consistent with our view of what the term means? And that would be the case in every trial. But I must say, Your Honor, that the only reason you can't discuss performance of a contract totally divorced from the terms of the contract. And, again, that's the question. But with an unambiguous term, you don't fight about the meaning of the term. And that is by definition. We fight about did this performance meet that term? And that was the question that kept getting asked. Are bond costs, and, in fact, Judge Bailson overruled any question, objected to any question in general. The only questions he would let us ask are, are these particular costs that are at issue in this case, the legal fees and the bond costs, are they in the meaning of the contract? No. Why not? Give your answer. I mean, that sounds totally irrelevant to me. That's a legal analysis. That's a question for the court. If the meaning of the contract is unambiguous on the issue that we're concerned with here, which is the scope of the word collecting, then no witness should be asked that question. And no witness should be able to say why they think it's within the contract or not. Those are, they're also, it sounds like, at least in some of the cases, situations you're talking about, quote, expert opinions given by non-experts. I don't see how that could possibly came in. Because the question is whether the performance met the contractual specifications, which is the quintessential jury question. Well, okay. All right. Thank you very much, Mr. Krauss. Thank you, Your Honor. Mr. Kingsley. Thank you. I just have a, I think two points I want to make on rebuttal. You heard Counsel Harp on this. You do have to talk into the mic, sir. All right. You heard Counsel Harp on this notion that this was all about performance. It was not about performance. There was no evidence at trial about this performance question. This was not, the question, the evidence presented wasn't does this fit within the category of collecting and selling the tax credits. The questions were always what do you think this contract phrase means? And here's an example, and it's cited in our brief. It was to Mr. Schaefer, who was one of the brokers. Here's the real question that we're asked at trial. You need to give us a page cited here. It's on page 31 of my brief, Your Honor. It's on page A2764 of the record. Question by Lehigh. When you were negotiating this asset purchase agreement, what was your understanding of the words net of costs incurred by purchaser in connection with collecting and selling such tax credits? And then he goes on to answer to say that the phrase in the contract that we get to deduct collecting and selling the tax credits really means just the cost of selling the tax credits and going after the proceeds. But that's not what the contract says. The contract says When that question was put, did you object? I objected there and dozens of other times. I understand. I just wanted to Absolutely. Yes, I did, Your Honor. The contract doesn't say we just get to collect the proceeds, the cost of collecting the proceeds. We get to collect for the cost of collecting the tax credits themselves. There was no cost really associated with collecting the proceeds. Whoever we sold it to just gave us the money. But the cost of collecting the tax credits themselves was arduous. It involved months and months of work, several trips to Puerto Rico, begging and borrowing the Puerto Rican treasury to do this. We had to promise to keep the business open for 10 years, and we had to post a bond, which cost $300,000, to guarantee that obligation. So the notion that this was all about performance and the question of did we perform, that was not the evidence presented by Lehigh at all. Mr. Notario, who was the Puerto Rican accountant, testified on their behalf. And he also said collecting and selling really means just selling and then collecting the proceeds. And Lehigh Press, in their closing arguments to the jury, described this testimony as the heart and soul of Mr. Notario's testimony. The heart and soul of his testimony was the literal words of the contract don't really mean what they say. Lehigh Press' argument, closing argument, summarizing all their evidence to the jury was, ladies and gentlemen of the jury, don't believe your lying eyes. Don't believe the English words that were negotiated by lawyers in Philadelphia into this contract. Believe what our witnesses said on the stand, which is a completely contrary meaning to the contract. Which brings me to my second point. Lehigh apparently concedes that there's no ambiguity. The judge ruled against them several times. There's no appeal. They didn't challenge it. It's not ambiguous. But your Honor's asked about it, so I want to emphasize this other point. In Delaware, you can only have an ambiguity if there's more than one reasonable interpretation of the contract. And I think someone said if there's two or more interpretations. But that's not good enough. It has to be a reasonable interpretation. And what Lehigh, what Lehigh, the evidence Lehigh presented was that collecting and selling really means just selling. And that is not a reasonable interpretation. I think in one of the previous cases, one of your Honors said this does unholy violence to the English language. That comment resonated with me because I think it's equally true of this case as well. What's your response to Mr. Krause's argument that parole evidence under Delaware law is admitted when it's consistent with a contract? I guess there's. I know you're saying it wasn't consistent. Horribly. But the general legal point that he's asserted, that parole evidence is admitted if it's consistent with the legal terms. I don't think that's the law. It's a True North case. The True North case does not represent the law. It cited, I think, an unpublished decision. And it's never been cited since then. And I think we cited a dozen cases to the contrary. Here's the real law of Delaware. And again, I think we have one footnote that's a whole page long. It's sometimes called the four corners rule. It's sometimes called the sole source rule. The case law in Delaware says in an unambiguous contract, you are forbidden from searching for the intent of the parties. You may look to the four corners of the contract itself and nowhere else. The contract itself is the sole source of the meaning of the words in the contract. Delaware law is categorical on that point. You don't get to introduce parole evidence for any other reason. And I think the Court has said, what would be the relevance of that? Here's some parole evidence to tell you that collecting really means collecting. Or when we put the number four, we really meant the number four. That would be irrelevant anyway. And to emphasize, perhaps to beat a dead horse, it was horribly inconsistent. We were entitled to deduct two things, the cost of collecting and the cost of selling. And their evidence was we didn't get to do one of those. Got you. Okay. Any other questions? No. Okay. Thank you, Mr. Kingsley. Thank you. Thank you, Mr. Krause. Appreciate your arguments today. We have the matter under advisement.